I believe there is one issue that has been sorely overlooked when we are talking about whether or not Mr. McDermott was in custody. It was an issue that was brought up by the I don't believe it's been emphasized enough. And that fact is that Mr. McDermott had his weapon taken away. And not only was his weapon taken away, but a record check was run on that weapon without any reasonable suspicion, any probable cause, any reason whatsoever. That factor, in my mind, definitely goes to the fact that Mr. McDermott was in custody and he was not freed. Well, you know, many times in the Terry stop, you get these Terry stop cases where the officers will stop the defendants or whatever concern there may be, they, you know, put them in the vehicle, close the door while they do some quick preliminary checking, and essentially lock them up. And they do that for officers.  I believe that there. Yeah. Yeah. Thank you, Your Honor. Addressing the issue of the Terry stop, I do believe that the gun, you were talking about the gun, and I was just saying that I imagine, I gather that the officer took the gun for officers. So why is that so paramount in your reassessment of the case? And Your Honor, just to clarify, I'm not asking for a holding that anytime an officer takes a gun, that's automatically the person's in custody. I think we have to look at it within the totality of the circumstances of what happened that afternoon to Mr. McDermott. He was out in the desert metal detecting. The officer summoned him towards him. There is some talk beforehand that he was walking towards the officer initially. But when the officer summoned him towards him, he did have enough information for a Terry stop. I believe he had the right to ask him questions about the marijuana. But when he walked up to the vehicle, he could smell burnt marijuana. I agree. He can talk to him. He can ask a few limited questions to determine whether or not there was a violation of someone smoking marijuana or having marijuana. The problem is when he summons him towards him, he asks him to raise his arms after asking if he was armed and takes his weapon away. And he says for officer safety reasons. But what is the officer's safety reason for running a records check on that gun? If someone has a Second Amendment right to carry a firearm for their self-protection and if this records check prolonged that stop by checking the database for anything having to do with that weapon, it also sets a precedent that any officer, that any time they have a valid Terry stop, can take the additional step of confiscating somebody's weapon and running a records check on that weapon without any repercussions for the government. So I believe when we look at the totality of the circumstances, that fact adds on to the fact that Mr. McDermott was in custody and should have been given his Miranda warnings. The district court, in my mind, erred in overturning the magistrate judge's decision that Mr. McDermott was in fact in custody. And when you look... The only question that had to be answered was whether or not a reasonable person in light of all of these circumstances would have felt free to leave. Correct, Your Honor. And a reasonable person in the situation of Mr. McDermott would not have felt free to leave. He was summoned over by the officer. His firearm was taken away. His identification was taken away. He was separated from his friend. His friend was being watched by the war patrol agent. And the Ranger Livingston took him to a separate area to question him. He was accused of criminal activity. Taking those facts into consideration, a reasonable person would not have felt that they could jump past the officer, go into the officer's patrol car, retrieve their firearm, load it back up again, grab his ID, go into his van, and then have the officer's vehicle was parked, as the magistrate judge found, directly behind Mr. McDermott, conduct some sort of three-point turn to get out of that area. A reasonable person would not have felt free to leave. They would have felt that they were in custody. And for that reason, the Miranda warnings should have been given. What is the... Indeed, Your Honor. That threat was evident that if he didn't tell the truth, the officer did ask him initially, do you have any marijuana on you? And he says, no, I do not. And then that's when the threats came into play. Let me ask you something that might impact what we do here. This was a misdemeanor case, right? It was, Judge. So what is the scope of review or standard of review when the district judge reviews the magistrate judge's rulings on that Miranda issue in a misdemeanor case? Maybe it's Rule 58 that the district court sits in ruling as if it was a court of appeals. So essentially, Your Honors, are the Supreme Court reviewing the district court. So does that mean the district court should have reviewed the Miranda findings under the clear error rule? Whether or not he was in custody de novo, the facts underlying that should have been reviewed for clear error. And I also believe, Your Honor, that that is part of the problem in this case. I believe the district court changed the facts. Despite noting correctly the correct standard of review, the clear error for the facts, they slightly changed the facts so that they could benefit the analysis of finding that Mr. McDermott was not in custody. So the district court does have the authority to expand the facts or to pull from the facts of the information that came in. Is that correct? I don't think so, Your Honor. I think the government argues that. But in my opinion, the judge, instead of just adding to or analyzing the facts, actually changes them a little bit. I don't know. Well, you see, what bothers me, it seems like, in part at least, the district court reviewed these facts de novo and made some of his own findings, which is not clear error standard. Now, I think it's different if, and sometimes I hear it here, you know, they have the magistrate judges conduct discretionary and felony cases. But in those instances, I think the district court can maybe exercise a little more review. But I think it's different. It could be different in the misdemeanor case where the magistrate judge is actually the trial judge, right, and tries the case. That's correct, Judge. But it's not clear to me what the, you know, what scope of review the district judge has. I agree, Your Honor. And I think it is probably going to be confusing because the district court normally does a report and recommendations, and they review those. And these cases, at least in Tucson, we don't see as often going to trial. It is, I would note for the record, that the district court did, in my opinion, put in the correct standard of review in their order. It just appeared to me, reading that order, that they didn't follow that standard of review. One of the main issues. Let me ask you. There was one other issue that caught my eye. So there was a Fourth Amendment. Was there a Fourth Amendment issue here? There was, Your Honor. The Fourth Amendment.  Is that right? That's correct, Your Honor. Because she said under the fruit of the poisonous tree, all this stuff has to be suppressed. That's right. The magistrate judge. And once the district court overturned the magistrate judge's suppression ruling, did the district court go on to decide? Or what happened to that Fourth Amendment issue? Did it just go away? It kind of vanished. It kind of vanished into thin air. We raised the Fourth Amendment issue. We put it forward at the suppression hearing. It was properly raised. But as, Your Honor. It was raised before, again, before the district court. It was, Your Honor. The direct language from the, would have been my response brief to the government's opening brief, if this Court chooses to not affirm the magistrate's ruling, defendant respectfully asks that the case be remanded to the magistrate judge for a ruling on whether or not the search of the vehicle was constitutional, as the magistrate judge did not rule on that issue, since the 2.2 grams of marijuana were suppressed as a fruit of the Miranda violation. And this is clear as day in the magistrate judge's order. She just says, I'm not going to touch that issue because I find the Miranda violation. So then we ask the district court, well, please send it back so we can get a ruling on that. So to this day, Mr. McDermott has not had a ruling on the Fourth Amendment issue. I'm sort of sensitive to it because the district court judge has an issue, in fact, with it. But I wasn't. In hindsight, Your Honor, that should have been done. Right. In hindsight, that should have been done. But I believe it was adequately pled and the issue has been preserved. So we're here. So I have to stick with that. But thank you. Did you want to say something? Yes, Your Honor. Thank you. Good morning, Your Honors. May it please the Court. My name is Ryan DiGio and I represent the United States Attorney's Office for the District of Arizona. Just to speak with the last point that was brought up by Judge Block in terms of raising the issue about the Fourth Amendment, the government does not feel that issue was properly raised. Part of the response brief that Mr. Maldonado spoke about, requesting the court to remand it, that was all that was put forth in terms of why exactly the Fourth Amendment was violated. But the magistrate judge didn't address it. Right. And she says so in her decision. Correct. So why would the district court go on to decide that? Well, the district court's decision on the Miranda issue speaks to a lot of the same facts and a lot of the same issues as a Fourth Amendment claim would arise. But the district court is sitting as an appellate, right? Not necessarily, Your Honor, because in this case there was a waiver of a district court trial. So the ability of the district court to hear the case as the trial court was there, there was a waiver that allowed the magistrate to be the trial court. Not the ability, but in this case the magistrate court was the trial court. And, you know, Judge Jorgensen even says in order, you know, I'm acting as a court of appeals. But at a different phase than what we're talking about. In terms of the suppression issue, how the case progressed was there was the suppression motion for the magistrate judge. And then before the trial, it was appealed as it is customarily done when the district court is sitting as the trial court. The motion to suppress court and recommendation went up to Judge Jorgensen for review at that point. And then it was reversed and remanded. Well, let me ask you. At that point, was that before, or it was done by designation, stipulation, but before the magistrate judge was designated to hear the trial? Yes. I apologize. I believe the waiver was done before the motion to suppress was heard by the judge. Yes. I don't know.  Yes. For a class-A misdemeanor, which this was. It's not necessarily that a waiver is necessary, but the defendant had the option to have the trial heard as a jury trial in front of district judge Jorgensen. Right. But that designation of the magistrate judge as the trial judge was made before the suppression hearing? I believe it was, Your Honor. All right. So then by the time the district court heard the appeal from the suppression ruling, the magistrate judge had already been designated as a trial court, and the district court was sitting as an appellate. Right? I don't believe that's the case, Your Honor. Why not? Because there's really nowhere else for the motion to suppress to go without another review at the district court level once the magistrate has the hearing. So really, if the magistrate court makes its ruling as the trial court on the motion to suppress, at that point, there's nowhere to appeal that decision. So the district court is still sitting pursuant to the rules as the trial court until the trial begins, is the argument of the government. So in the meantime, when there was a suppression issue, under the rules it was brought up to district court Judge Jorgensen for a ruling. Because at that point, before the trial begins, the court can still order, and it can still be agreed upon, that the district court will hear the trial. So even though the waiver was done before the suppression hearing, until the trial begins, it's not certain where that trial is going to be held and which judge is going to hear it. The district court still had the ability to hear it. They have a waiver in front of them allowing the magistrate court to do it. But based on circumstances that could have happened in the case, the district court could have not accepted the waiver, and the district court still could have been held. I mean, that's just all a bunch of speculation. Why don't you turn to the issue at hand? Certainly. So there were a couple of things argued in terms of the Terry frisk. And we would argue in this case, even though the Terry law is applicable to these types of situations, no Terry frisk actually occurred. And Ranger Livingston testified as such. He did not perform a Terry pat-down as he had been trained. He simply asked Mr. McDermott if he was armed. Mr. McDermott informed him that he was. Ranger Livingston then asked Mr. McDermott if he could disarm him. The defendant said he could. He pulled his hands up. The Ranger took the firearm. There was no further pat-down at that point. So there could have been other firearms on the defendant's person. This wasn't a Terry frisk in terms of what actually happened. And so the points that were raised about freedom to leave, but freedom to leave is. So in your view, this is nothing more than a, you know, like a friendly encounter on the street. Hey, what's going on? The court is correct in one sense. Nothing more than a little friendly, you know. That's correct. How's it going? Got a little marijuana there? Well, because the objective situation is important in terms of Miranda. So you're here in an isolated area on Federal land, and you have very few individuals out there. You have the Ranger, and you have the defendant, and someone he was with. And so out there, I believe it's still a consensual encounter just to ask someone in such an isolated area if they are armed, and then to disarm that person, and then to carry on still with a conversation. And that's what the record bears out it was. That's consensual to ask for the gun, ask for the identification, and take those two items and put them in the car. I think that's a different analysis. That's what he did. That's what he did. And so in terms of doing that, but that makes it no different than a traffic stop. And you have the Berkmer cases in that project that talk about a traffic stop still does not invoke Miranda protection. Even though an officer will have someone's license, they might even have someone's firearm. And I think the argument about the check being done on the firearm really doesn't come into the analysis because the firearm is inside the officer's vehicle. Whether or not a check is performed doesn't have no bearing on the Miranda in custody analysis. I would like to ask you specifically how you would resolve this confrontation from the record. Ranger Livingston, quote, explained that McDermott should be honest, so the encounter would not have to go further. And, quote, said he would not arrest him if he told the truth. Now, wouldn't a reasonable person believe that he was going to be arrested if he didn't come forward and confess up? And isn't it reasonable to assume that that person said that? I'm not going to be able to leave here unless I do confess. No. He's going to be arrested. Because, again, the objective circumstances of what was going on out there is he's on a federal park. He's on federal land. Well, you tried out all those things, but I just don't know how you can get away from this particular threat that was visited upon him by Ranger Livingston. It seems to me that this is really the no-kill in this year that he is not going to be arrested. We don't classify what Ranger Livingston told him as a threat. That would be how it would progress. He wanted the defendant to be honest with him first and foremost. If not, he had smelled the burnt marijuana, so he could have gone to those mechanisms. He was going to arrest him. He threatened him with arrest. I don't believe that was a threat for arrest. He just wanted to make sure that if the defendant was answering him truthfully, the case would not have possibly escalated. Because, again, at that point, because, again, of the settings of the situation, he smells burnt marijuana, not raw marijuana. Ranger Livingston testified that he had a 420-pound seizure, and that he did testify about the difference between burnt and raw marijuana. Correct. But, again, it's not simply free to leave. That's more under the Terry standard. Under the Miranda standard in the Stansberry case, the Miranda standard for when in custody for Miranda purposes apply is arrest or something, some type of action based on the circumstances. That's tantamount to arrest. So it's not simply freedom to leave. And, again — Well, that's what the court tells us the stand states. It's under the circumstances, under all the circumstances, for a reasonable person in this kind of situation to leave. That's where I disagree with the court there. I don't believe under the Miranda standard it's whether a reasonable person would believe they're free to leave. It's whether a reasonable person would believe that they are, at that point, under arrest or circumstances are similar to formal arrest. You're under arrest. You're not free to leave. Well, again, the corollary we've drawn is with a traffic stop. Now, no one feels free to leave a traffic stop once you're pulled over. Or a Terry stop. Or a Terry stop. You simply cannot just walk away. You simply cannot just drive away from a traffic stop. So your whole argument here, the pretense of whether we believe this is a Terry stop, you don't really feel free to suggest that? Not necessarily. Our argument here is that there's a different standard for Miranda custody that is heightened from just the freedom to leave. Assume this is not a Terry stop.  In terms of what, Your Honor? How would you then state this? So just under Miranda's situation, Miranda's never triggered. And, again, it's just a consensual encounter between the ranger and the defendant. And the facts bear that out. There was a conversation even afterwards about a pallet. There was a conversation between the ranger and the defendant about his job. It was even exhibited, the motion to suppress, that the defendant had given ranger Livingston his card about trying to even solicit business from him, from what Mr. McDermott did for a living. So given the objective situation, there was no raised voice. There was no shouting. He did disarm the defendant. But it never reached beyond that. It was always a casual conversation. It's in an open area. He's leveling with Mr. McDermott, saying, look, this is federal land. That's the case that I've seen back in Brooklyn, though, when the sheriff was soliciting things back in Brooklyn. Right. But that's a skill that's not been determined to be an illegal or out-of-bounds police practice. It's not about the subjective knowledge or the subjective skills of either the ranger or the subjective knowledge of the defendant. It's about the objective circumstances. Well, it's not subjectivity in terms of how skilled he is. It's more still an objective analysis of whether or not he pulled his gun, whether or not there was raised voice, whether or not there was shouting, whether or not there was forceful commands. Those to me are still objective facts. No, I do not. Let me ask you this. If it was just nothing more than a consensual encounter, why was it necessary for the officer, once he asked the fellow if he had marijuana, he said, I think he said no or something. Or he'd been smoking marijuana, he said no. Correct. Why wasn't that good enough? Because the ranger had smelled burnt marijuana. So he had more than a reasonable suspicion that he did. He certainly didn't. But, again, under the objective facts of the encounter, it's still a casual encounter. So, again, it's not about the subjective intent of what Livingston knew at the time. It's about what transpired objectively as just a casual conversation. He did disarm him, but they spoke in a conversational tone. He leveled with Mr. McDermott. Mr. McDermott finally told the truth and stated he had the drugs. They did speak even afterwards, after the drugs were seized, about Mr. McDermott's job. Mr. McDermott gave him a card. So, again, the objective facts as we know them show that this was a casual conversation. It was a casual encounter. And if the Court has no further questions, I'll conclude at this time. Thank you, Your Honor. Okay. Your Honor, in the great State of Arizona, there's nothing casual and friendly about taking away somebody's gun. For whatever reason, we love our firearms and we're an open carry State. And if it was, in fact, a friendly encounter, then the officer never should have taken the gun away. The officer could have simply said, keep your hands out where I can see them. Don't reach for your weapon. And perhaps that would have led towards the argument of the government that it wasn't a friendly encounter. But it was not. It puts up against the whole, you know, concern of an officer for his or her safety. It does, Your Honor. And I don't mean to keep beating that point. I do think it is one factor that goes into, for officer safety, he didn't have to run a records check on that. But I also, in my brief time here, wanted to address the jurisdictional issue or the standard of review. ER2, the district court writes, the government has filed an objection to magistrate's order, which the court accepts as an opening brief. And then on ER5, the district court goes on to write, the scope of the appeal is the same as an appeal to the court of appeals from a judgment entered by a district judge, citing Rural Criminal Procedure 58G2D. I also wanted to briefly address the government's argument that the Miranda standard is different than freedom to leave. I think that's ‑‑ Well, I actually stated, I don't think I accurately stated. So in Stansbury, the court says right out when it's going into the standard, it says, be held in Miranda that a person questioned by law enforcement officers after being taken into custody or otherwise deprived of his freedom of action in any significant way must first be warned that he has a right to remain silent. And I agree, Your Honor. I was going to quote pretty similar language from the United States v. Craighead or United States v. McNally. And this Court has repeatedly said the same thing. And here we have an example of that. He was deprived of his freedom in a significant way. Exactly, Your Honor. There is a separate, apart from custody, deprived of your freedom of action in a significant way. And those were about all the points I wanted to raise. If Your Honors have no further questions, I'll take a seat. Thank you. Great. Thank you. Thank you, counsel. We appreciate your arguments. Have a safe trip back there. Thank you, Judge. Tucson.
judges: Block, Tashima, Paez